Wolfson

UNITED STATES PATENT AND TRADEMARK OFFICE
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA  22313-1451

```
THIS OPINION IS A
PRECEDENT OF THE
T.T.A.B.
```

Mailed:  February 21, 2008

Opposition No. **91165010**

Green Spot (Thailand) Ltd.

v.

Vitasoy International Holdings
Limited

**Before Quinn, Drost and Mermelstein,**
**Administrative Trademark Judges.**

By the Board:

Opposer, Green Spot (Thailand) Ltd., filed a notice of
opposition against registration of the mark VITAMILK, filed
by Vitasoy International Holdings Limited, in international
classes 29, 30 and 32 for, *inter alia,* "soy beverages,
namely, fruit juices and fruit drinks made with soy."[1]  The
opposition is based on opposer's alleged prior use of the
mark VITAMILK for "a variety of beverage products" and its
claim that a likelihood of confusion exists between the
marks.  Applicant filed an answer denying the salient
allegations in the complaint and setting forth several

---

[1] Trademark application serial no. 78436520 filed June 16, 2004
on the basis of applicant's bona fide intent to use the mark in
commerce.

affirmative defenses, in particular that opposer's action is barred by the "*Morehouse*" defense.[2]

This case now comes before the Board for consideration of opposer's motion for summary judgment on its pleaded ground of priority and likelihood of confusion under Section 2(d) of the Trademark Act.  The motion has been fully briefed.  For the reasons set forth below, opposer's motion is granted.

A motion for summary judgment is a pretrial device, intended to save the time and expense of a full trial when a party is able to demonstrate, prior to trial, that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Opryland USA Inc. v. Great American Music Show Inc.,* 970 F.2d 847, 23 USPQ2d 1471 (Fed. Cir. 1992); and TBMP § 528.01 (2d ed. rev. 2004).  The Board may not resolve issues of material fact, but can only ascertain whether genuine disputes exist regarding such issues.  The Board views the evidence in a light most favorable to the non-movant, and all justifiable inferences are to be drawn in the non-movant's favor. *Lloyd's Food Products Inc. v. Eli's Inc.,* 987 F.2d 766, 25 USPQ2d 2027 (Fed. Cir. 1993); *Opryland USA, supra.*

---

[2] Also known as the prior registration defense, the doctrine was first enunciated in *Morehouse Mfg. Corp. v. J. Strickland & Co.,* 407 F.2d 881, 160 USPQ 715 (CCPA 1969).

## *Likelihood of Confusion*

There is no genuine issue of material fact as to likelihood of confusion in this case.  The marks are identical and the goods overlap; both parties assert use or a bona fide intent to use the mark VITAMILK on soy-based beverages.  On page 8 of its brief, applicant states that it "does not dispute that there is a likelihood of confusion between its mark and [opposer's] purported mark."  Again, on page 15 of its brief, applicant confirms that it "does not dispute that [opposer's] use of the Latin character VITAMILK mark and [applicant's] use of the Latin character VITAMILK mark on their respective products concurrently in the United States would result in consumer confusion.  There is no doubt that it would."

Opposer is thus entitled to a finding in its favor on the issue of likelihood of confusion.

## *Priority*

There is also no genuine issue of material fact as to opposer's priority of use of its mark in the United States.

Opposer proved that it first used its mark in the United States on December 20, 2003.  To establish this date, opposer submitted the declaration of the Chairman of its Executive Board, Mr. Chote Sophonpanich, who attests that opposer made a sale of 1480 cartons of its "VITAMILK To Go" beverage product to its United States distributor on December 20, 2003; that opposer's distributor "in turn, sold

those products bearing the VITAMILK mark to retail outlets around the United States;" and that opposer has engaged in more than 20 such sales. *Sophonpanich declaration,* para. 8.[3] While the volume of opposer's sales during this period was not large, we find as a matter of law that the extent of its use was sufficient to constitute use of the mark in commerce with the United States, and was not token use made merely to reserve rights in the mark.

On the other hand, applicant has made no use of its mark in United States commerce. In response to opposer's requests for admission, applicant admits "[t]hat applicant has not offered, sold, marketed or distributed any goods under the English language/Latin character VITAMILK mark, as reflected in U.S. Serial No. 78/436,520, in the United States." *Applicant's Response to Request for Admission No. 33,* March 7, 2006. Applicant does, however, argue that its mark is famous in other countries, but that fact alone cannot establish priority in the United States. *See Person's Co. Ltd. v. Christman*, 14 USPQ2d 1477, 1479 and 1480, fn. 18

---

[3] Attached to Mr. Sophonpanich's declaration are copies of an invoice showing the 2003 sale to its distributor and copies of approximately 24 additional invoices showing sales to the U.S. distributor from January through September 2004. Although applicant contends that opposer's use of its mark in the United States from 2003-2004 was *de minimis*, such sales were sufficient to come to applicant's attention, and in 2004, applicant sent cease and desist letters to "various wholesale and retail outlets in the United States that were offering and selling [opposer's] product bearing the VITAMILK mark." *Sophonpanich declaration,* para. 9. A copy of one such letter is attached to Mr. Sophonpanich's declaration.

(Fed. Cir. 1990)("The concept of territoriality is basic to trademark law; trademark rights exist in each country solely according to that country's statutory scheme. ... Although Person's did adopt the mark in Japan prior to Christman's use in United States commerce, the use in Japan cannot be relied upon to acquire U.S. trademark rights.  Christman is the senior user as that term is defined under U.S. trademark law.").[4]

Accordingly, the earliest date upon which applicant can rely for priority is the filing date of its intent to use application (contingent upon registration).  *See* Section 7(c) of the Trademark Act; *Zirco Corp. v. American Telephone and Telegraph Co.*, 21 USPQ2d 1542, 1544 (TTAB 1991)("[T]here can be no doubt but that the right to rely upon the constructive use date comes into existence with the filing of the intent-to-use application and that an intent-to-use applicant can rely upon this date in an opposition brought by a third party asserting common law rights"); and 2 McCarthy on Trademarks and Unfair Competition § 16:17 (4th ed. 2007).  Inasmuch as

---

[4] Applicant also raised the affirmative defense of unclean hands, based on its contention that opposer adopted its mark with knowledge of applicant's reputation overseas.  Such knowledge, even if proved, would not raise an unclean hands defense.  *See Person's Co, supra.*  On the other hand, applicant has neither pleaded nor established that its mark is well-known in the United States, within the meaning of Article 6*bis* of the Paris Convention.  Paris Convention for the Protection of Industrial Property, Mar. 20, 1883, as rev. at Stockholm, July 14, 1967, 21 U.S.T. 1583, Art. 6*bis*, 828 U.N.T.S. 305.  *See Aktieselskabet af 21. November 2001 v. Fame Jeans Inc.*, 77 USPQ2d 1861, 1864 (TTAB 2006).

the subject application was filed on June 16, 2004, and opposer has established use of its mark beginning in December 2003, opposer is entitled to a finding in its favor on the issue of priority.

### *Standing*

A party may establish its standing to oppose by showing that it has a "real interest" in the case, that is, a direct and personal stake in the outcome of the opposition. See *Ritchie v. Simpson*, 50 USPQ2d 1023, 1026 (Fed. Cir. 1999); and *Lipton Industries, Inc. v. Ralston Purina Co.*, 213 USPQ 185, 189 (CCPA 1982). Opposer has established its standing to bring this opposition as the prior user of the mark VITAMILK for beverages.

There being no genuine issues of material fact with respect to opposer's standing, priority or claim of likelihood of confusion, we turn now to a discussion of applicant's *Morehouse* defense.

### *The Morehouse Defense*

The *Morehouse* defense is an equitable doctrine that applies where an applicant owns a prior registration for essentially the same mark identifying essentially the same goods (or services) that are the subject mark and goods of the proposed application. *Morehouse Mfg. Corp.,* 160 USPQ 715 (CCPA 1969). In such case, "the opposer cannot be further injured because there already exists an injurious registration," and therefore the additional registration

6

does not add to the injury. *O-M Bread, Inc. v. U.S. Olympic Comm'n,* 65 F.3d 933, 36 USPQ2d 1041, 1045 (Fed. Cir. 1995); *see also* 3 McCarthy, J. Thomas, McCarthy on Trademarks and Unfair Competition § 20:38 (4th ed. 2007); and TBMP § 311.02(b)(2d ed. rev. 2004).

Applicant contends that its ownership of Registration No. 1147761,[5] for the mark shown below, precludes any further harm to opposer under the *Morehouse* defense.

維他乳

Whether opposer will suffer added damage from registration of applicant's mark VITAMILK can be determined by comparing the appearance, pronunciation, meaning, and commercial impression of the marks. Ultimately, we must determine if the marks at issue here are "essentially the same" mark. *See Continental Nut Co. v. Le Cordon Bleu,* 494 F.2d 1395, 181 USPQ 646 (CCPA 1974) (failure of Cordon Bleu cooking school to oppose BLUE RIBBON for nuts does not preclude opposition to CORDON BLEU for nuts); *Lincoln Logs, Ltd. v. Lincoln Pre-Cut Log Homes, Inc.*, 971 F.2d 732, 23 USPQ2d 1701 (Fed. Cir. 1992) (failure to object to THE ORIGINAL LINCOLN LOGS with house eaves design does not preclude

---

[5] Registration No. 1147761 for "vegetable based milk substitute made from soya beans in Class 29;" registered February 24, 1981 under Section 44(e) of the Trademark Act; Section 8 affidavit accepted; Section 15 affidavit acknowledged; renewed May 19, 2001.

opposition to LINCOLN LOGS LTD. with profile of Abraham Lincoln and log house design).

Turning to a comparison of applicant's prior Chinese character mark and the mark VITAMILK, there is no question that the marks are dramatically different in appearance. As for the pronunciation of applicant's Chinese registration, applicant contends that the first two characters would be pronounced "vi" and "ta," and the third character would be pronounced "lai" or "nai."[6] This differs significantly in sound from the mark in the subject application, which would be pronounced "vi ta milk."

As for the meaning of applicant's previously registered mark, the parties agree that the first two characters have no relevant meaning in Chinese, and that the third character means "milk." Under the doctrine of foreign equivalents, foreign words from common languages are translated into English for the purpose of comparing them to other marks in the context of a likelihood of confusion determination or in deciding whether the mark is descriptive or generic in its foreign language.[7] Applicant argues that it is entitled to

---

[6] Applicant has submitted the declarations of its Company Secretary, Tong Ah Hing, and Qing Yuan Sun, a site supervisor employed by Merrill Legal Solutions in San Francisco, California in support of its contention that its mark would be pronounced "vi ta lai" or "vi ta nai." A third declaration submitted by applicant did not address the issue of pronunciation of the mark.

[7] *See e.g., In re Oriental Daily News, Inc.*, 230 USPQ 637 (TTAB 1986)(Chinese characters translated as "Oriental Daily News" are descriptive of a newspaper under the doctrine of foreign

rely upon the doctrine of foreign equivalents, by which the third character of its Chinese mark would be translated into "milk." Applicant argues that this *translation*, together with the *transliteration* or sound of the first two characters is essentially the same mark as in its currently-pending VITAMILK application.

We disagree. As a matter of law, the doctrine of foreign equivalents does not apply to a foreign mark partially comprised of characters that have no English translation, at least with respect to a *Morehouse* analysis. Applicant's Chinese character mark simply cannot be "translated" into English and considered as an English language mark. The fact that the first two characters of the mark have no meaning in English makes the mark overall incapable of translation.[8]

The precedent most analogous to the present case is *Continental Nut, supra,* 181 USPQ at 647. In *Continental Nut,* the Board, rejecting applicant's *Morehouse* defense, refused registration of the mark CORDON BLEU for edible shelled nuts on the basis of likelihood of confusion with opposer's prior registration for the mark LE CORDON BLEU for educational services and magazines relating to cooking. The

_____

equivalents); 2 McCarthy, J. Thomas, McCarthy on Trademarks and Unfair Competition § 11:34 (4th ed.).

[8] In so holding, we have not ignored the three declarations applicant has submitted in support of its argument that relevant

Court affirmed the refusal despite the existence of a prior incontestable registration owned by applicant for the mark BLUE RIBBON for the same goods, because the marks CORDON BLEU and BLUE RIBBON "would not have the same significance to the American public [but would] create different commercial impressions." *Continental Nut,* 181 USPQ at 647.

The marks in the present case, like those in *Continental Nut*, create wholly different commercial impressions; here the marks are so different in their visual impressions that even if we were to agree with applicant that the marks are similar in pronunciation or meaning, any similarities are outweighed by the differences.[9] In considering the closely analogous doctrine of "tacking," the Federal Circuit has held that it may not be necessary to consider all points of potential similarity of the marks (*i.e.*, appearance, sound, meaning and commercial impression) when one factor alone is enough to find that the marks are

---

consumers would immediately know to sound out the first two characters of the mark and translate the third.

[9] In *Palm Bay, supra*, the doctrine of foreign equivalents was applied (directly) to a likelihood of confusion analysis. However, even a case where the doctrine of foreign equivalents may equate the meaning of two marks being compared, a likelihood of confusion may still not be found. *See e.g.*, *In re Sarkli, Ltd.* 721 F.2d 353, 220 USPQ 111, 113 (Fed. Cir. 1983)("[S]uch similarity as there is in connotation [between the marks REPECHAGE and SECOND CHANCE] must be weighed against the dissimilarity in appearance, sound, and all other factors, before reaching a conclusion on likelihood of confusion as to source.") Again, we note that *Morehouse* requires that the marks be essentially the same rather than merely confusingly similar - a more stringent requirement than might be necessary to support a likelihood of confusion claim.

not legally identical. *Van Dyne-Crotty Inc. v. Wear-Guard Corp.*, 926 F.2d 1156, 17 USPQ2d 1866, 1868 (Fed. Cir. 1991) ("It does not appear that the Board entertained any other evidence concerning the legal equivalence of these two marks except for the visual or aural appearance of the marks themselves. However, no more was necessary. Merely from review of the marks, it is clear that they create different commercial impressions." (citations and footnote omitted)). In the case at bar, the marks differ significantly in their appearance, sound, commercial impression and meaning, any one of which would rule out application of the *Morehouse* defense.

In order for the *Morehouse* doctrine to apply, whatever injury opposer may have sustained or may sustain from the registered mark cannot be increased by registration of a second mark. Here, the Chinese character mark is a stylized representation of three Chinese characters that creates a commercial impression wholly different from that created by the English-language mark. Opposer would still sustain enhanced injury if applicant were allowed to register the mark VITAMILK, because confusion (if any may exist) would no longer be limited to potential purchasers who speak both Chinese and English. In view thereof, there are no genuine issues of material fact that the marks are not "essentially

the same," and applicant may not rely on the *Morehouse* defense.

Accordingly, there being no issue as to priority or likelihood of confusion, opposer's motion for summary judgment is granted. Judgment is hereby entered against applicant, the opposition is sustained and registration to applicant is refused.