# United States Court of Appeals for the Federal Circuit

---

**IN RE: BAYOU GRANDE COFFEE ROASTING CO.,**
*Appellant*

---

2024-1118

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 90549985.

---

Decided:  December 9, 2025

---

ANDRIY LYTVYN, Hill Ward Henderson, PA, Tampa, FL, argued for appellant.  Also represented by THOMAS J. BANKS.

MICHAEL CHAJON, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for appellee John A. Squires.  Also represented by MARY BETH WALKER, NICHOLAS THEODORE MATICH, IV.

---

Before MOORE, *Chief Judge*, HUGHES and STOLL, *Circuit Judges*.

MOORE, *Chief Judge*.

Bayou Grande Coffee Roasting Company (Bayou) appeals a Trademark Trial and Appeal Board (Board) decision affirming the examiner's refusal to register the mark KAHWA for cafés and coffee shops.  We reverse.

## BACKGROUND

In February 2021, Bayou filed a trademark application to register the mark KAHWA for cafés and coffee shops. J.A. 40–45.[1]  The examiner issued a non-final office action refusing registration after finding the mark generic or merely descriptive of cafés and coffee shops.  J.A. 58–62. The examiner relied on the doctrine of foreign equivalents to refuse registration because KAHWA allegedly means "coffee" in Arabic.  The examiner also refused registration because Bayou failed to submit an English translation showing KAHWA means coffee.  In response, Bayou argued KAHWA does not mean coffee in Arabic and the doctrine of foreign equivalents cannot apply because KAHWA has an alternative English-language meaning as a specific type of traditional Kashmiri green tea from Central Asia.  J.A. 72–78; J.A. 134.  In a final office action, the examiner maintained the prior refusals based on the coffee meaning and added new grounds of refusal based on the tea meaning. J.A. 897–901.

Bayou requested reconsideration, arguing KAHWA does not mean coffee in Arabic and cannot be generic or merely descriptive of cafés and coffee shops based on its Kashmiri green tea meaning because there is no record evidence of such tea being sold in American cafés and coffee shops.    J.A. 1000–11.    The examiner denied Bayou's

---

[1]    Bayou alleges it began using KAHWA in commerce in 2008 when it opened its first coffee shop in St. Petersburg, Florida under this name.  J.A. 41; J.A. 479.  Since launching, Bayou has expanded to fourteen coffee shops in the Tampa Bay area, all branded under the name KAHWA. J.A. 29.

request and maintained the refusals in the final office action.  J.A. 1235–38.  Bayou appealed to the Board, which affirmed the examiner's refusals based on the Kashmiri green tea meaning of KAHWA.  J.A. 1–34.  The Board declined to address the examiner's refusals based on the Arabic coffee meaning.  *Id.* at 1–6.

Bayou appeals.  We have jurisdiction under 28 U.S.C. § 1295(a)(4)(B) and 15 U.S.C. § 1071(a)(1).

## DISCUSSION

Bayou argues the Board's genericness and mere descriptiveness findings based on the Kashmiri green tea meaning of KAHWA constitute new grounds of refusal and are not supported by substantial evidence.  Bayou Br. 21–42.  Bayou also argues the Patent and Trademark Office (PTO) should be precluded from relying on the doctrine of foreign equivalents.  *Id.* at 20–21.

## I.  New Grounds

When considering whether the Board issued a new ground of refusal, the "ultimate criterion" is "whether applicants have had fair opportunity to react to the thrust of the rejection."  *Honeywell Int'l Inc. v. Mexichem Amanco Holding S.A. DE C.V.*, 865 F.3d 1348, 1357 (Fed. Cir. 2017).  The Board issues a new ground when it "relies on new facts and rationales not previously raised to the applicant by the examiner."  *Id.* (emphasis omitted).  Whether the Board relied on a new ground of refusal is a legal issue we review de novo.  *Id.*

The Board noted the parties devoted "the majority of their briefs" to addressing whether KAHWA means coffee in Arabic, and whether the doctrine of foreign equivalents applies.  J.A. 4.  The Board, however, exercised its discretion to forgo this issue, focusing instead on the refusals based on the Kashmiri green tea meaning.  *Id.* at 6.  The Board explained that Bayou and the examiner addressed this issue and put forth evidence KAHWA has a well-

established alternative English meaning as Kashmiri green tea. *Id.* at 4–6.

Bayou argues this constitutes new grounds of refusal because the Board reinstated these refusals after the examiner had withdrawn them. Bayou Br. 39–42. Bayou contends the examiner withdrew these refusals in denying Bayou's reconsideration request when the examiner stated that "given the esoteric nature of this beverage, there is no reason to believe that consumers would understand this morning [sic] such that it negates the Arabic meaning of the wording." *Id.* at 41; J.A. 1237. Bayou also contends the examiner's failure to address the Kashmiri green tea meaning in its appeal brief to the Board is further evidence the examiner had withdrawn these refusals. Bayou Br. 41. We do not agree.

Bayou does not dispute it responded to the examiner's refusals based on the Kashmiri green tea meaning. *Id.* at 40–41 (citing J.A. 898 (final office action); J.A. 1006 (reconsideration request)). Moreover, the examiner never withdrew these refusals. In denying Bayou's reconsideration request, the examiner referenced the "esoteric" nature of the Kashmiri green tea meaning when responding to Bayou's argument that the green tea meaning necessarily negates the coffee meaning, which the examiner did not agree with. J.A. 1237. In that same denial, the examiner "maintained and continued" the refusals from the final office action, which Bayou admits include the refusals based on the Kashmiri green tea meaning. *Id.* at 1235 (citing J.A. 897–901); Bayou Br. 40. And the examiner never withdrew any refusals in briefing to the Board. *See* J.A. 1499–1512. Because Bayou had a fair opportunity to respond to the examiner's refusals based on the Kashmiri green tea meaning and the examiner never withdrew these refusals, *Honeywell*, 865 F.3d at 1357, we conclude the Board's genericness and mere descriptiveness findings based on the Kashmiri green tea meaning do not constitute new grounds.

## II. Genericness

A generic term is the common descriptive name of a class of goods or services and cannot be registered as a trademark because it is incapable of indicating the source of goods or services. *Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.*, 786 F.3d 960, 965 (Fed. Cir. 2015). In determining whether a term is generic, the critical issue is whether relevant customers primarily use or understand the term to refer to the genus of goods or services in question. *Id.* "[A] term can be generic for a genus of goods or services if the relevant public . . . understands the term to refer to a key aspect of that genus—e.g., a key good that characterizes a particular genus of retail services." *In re Cordua Rests., Inc.*, 823 F.3d 594, 603 (Fed. Cir. 2016); *see also* 2 McCarthy on Trademarks and Unfair Competition § 12:24 (5th ed.) ("A generic name of goods may also be a generic name of the service of selling or designing those goods."). Whether a mark is generic is a question of fact we review for substantial evidence. *Princeton*, 786 F.3d at 964.

The Board found KAHWA generic for cafés and coffee shops. J.A. 7–20. Specifically, the Board found record evidence shows relevant customers regard KAHWA as the generic description for a type of green tea beverage, and cafés and coffee shops serve a variety of tea beverages. Based on this, the Board found KAHWA generic because it refers to a key aspect of cafés and coffee shops. Bayou argues the Board's genericness finding is not supported by substantial evidence. Bayou Br. 21–29.[2] We agree.

---

[2]    We note the Director of the United States Patent and Trademark Office (Director) elected not to respond to Bayou's genericness argument, arguing instead that we can affirm based on the Board's mere descriptiveness finding without reaching the genericness issue. Director Br. 3 n.2.

There is no record evidence of any café or coffee shop in the United States ever selling kahwa, a specific type of Kashmiri green tea. This is undisputed. Bayou Br. 21, 29 ("[T]he record in the present case contains zero evidence of a coffee shop or a café serving kahwa."); Oral Arg. 12:42–54 ("Q: You agree that there is no evidence that [kahwa] was sold in a café or coffee shop or tea shop? A: Yes, that's right."). KAHWA therefore cannot be generic for cafés and coffee shops because there is no evidence selling kahwa is a key aspect of café and coffee shop services, let alone any aspect of these services. *In re Cordua Rests.*, 823 F.3d at 603. In other words, the fact that relevant customers understand KAHWA to refer to a specific type of Kashmiri green tea is insufficient to establish genericness for cafés and coffee shops selling coffee and other kinds of tea. Accordingly, the Board's finding that relevant customers would understand KAHWA to be generic for cafés and coffee shops is not supported by substantial evidence.

## III. Mere Descriptiveness

"A term is merely descriptive if it immediately conveys knowledge of a quality, feature, function, or characteristic of the goods or services with which it is used." *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 963 (Fed. Cir. 2007). A merely descriptive mark cannot be registered unless it has obtained secondary meaning, also known as acquired distinctiveness. *In re Chamber of Com. of the U.S.*, 675 F.3d 1297, 1300 (Fed. Cir. 2012). Whether a mark is merely descriptive is a question of fact we review for substantial evidence. *Id.*

The Board found KAHWA merely descriptive for cafés and coffee shops. J.A. 20–22. Specifically, the Board found the record evidence shows KAHWA is a type of green tea, and cafés and coffee shops serve tea. Based on this, the Board found "KAHWA immediately informs prospective customers that the establishment serves this particular type of green tea drink" and "no imagination or thought is required by prospective customers to discern the nature of

Applicant's services." *Id.* at 22.  Bayou argues the Board's mere descriptiveness finding is not supported by substantial evidence.  Bayou Br. 29–31.  We agree.

As we already established, it is undisputed that there is no record evidence showing any café or coffee shop in the United States has ever sold kahwa.  *See supra Discussion* § II.  This necessarily means there is no evidence selling kahwa is a "characteristic of the goods or services" of cafés or coffee shops, let alone evidence showing relevant customers would immediately know selling kahwa is a characteristic of cafés and coffee shops.  *Bayer*, 488 F.3d at 963.  Accordingly, the Board's finding that relevant customers would understand KAHWA to be merely descriptive for cafés and coffee shops is not supported by substantial evidence.[3]

The Director makes several arguments in support of the Board's mere descriptiveness finding, each of which is unavailing.  Director Br. 24–31.  First, the Director cites record evidence showing (1) relevant customers understand KAHWA refers to Kashmiri green tea and (2) cafés frequently serve tea beverages (though not kahwa).  *Id.* at 24–28.  The Director's cited evidence, however, provides no support for the notion that serving kahwa is a "characteristic" of cafés or coffee shops.  Second, the Director argues the Board's finding is consistent with our case law recognizing that marks which are the name of goods are descriptive or generic of services featuring those goods.  *Id.* at 28–29.  The Director's cited cases are inapposite because there is no evidence selling kahwa is a feature of café and coffee shop services.

---

[3]    Bayou also argues that, if KAHWA is descriptive, it is still registrable because it has obtained acquired distinctiveness.  Bayou Br. 31–39.  Because we hold KAHWA is not descriptive, we need not address Bayou's acquired distinctiveness argument.

8            IN RE: BAYOU GRANDE COFFEE ROASTING CO.

Third, the Director argues it is irrelevant whether cafés or coffee shops currently sell kahwa because they could in the future, *id.* at 29–30, but this is pure speculation. *OSI Pharms., LLC v. Apotex Inc.*, 939 F.3d 1375, 1382 (Fed. Cir. 2019) ("Mere speculation is not substantial evidence.") (cleaned up). Fourth, the Director argues Bayou would have "enforceable rights against any café that serves kahwa in the future" if we reverse the Board, and it is undesirable to allow Bayou to have a monopoly on the use of a descriptive term. Director Br. 30. This is false. Bayou would have enforceable rights against an entity that tried to name its café or coffee shop KAHWA; it would not have rights against a café simply for selling kahwa.

Fifth, the Director argues KAHWA necessarily tells customers the café "serves a variety of teas," which describes all cafés because serving tea is a defining characteristic of cafés. *Id.* at 31. This is a new argument on appeal. *See Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1080 (Fed. Cir. 2015) (holding the Administrative Procedure Act precludes an agency from changing theories "midstream" without giving respondents reasonable notice of the change and an opportunity to respond). The Board never found KAHWA descriptive because it refers to a "variety of teas." Instead, the Board found KAHWA descriptive because it informs customers "the establishment serves this particular type of green tea drink." J.A. 22. Moreover, there is no evidence showing relevant customers would interpret KAHWA— which refers to a specific type of tea—to refer generally to a variety of teas. Even if there was such evidence, it would tend to show the mark is suggestive, not descriptive, because the relevant customer would have to make the mental leap from Kashmiri green tea to tea generally, and then to cafés and coffee shops. 2 McCarthy on Trademarks and Unfair Competition § 11:67 (5th ed.) ("If the mental leap between the word and the product's attributes is not almost instantaneous, this strongly indicates suggestiveness, not direct descriptiveness.").

Because there is no record evidence showing any café or coffee shop in the United States has ever sold kahwa, the KAHWA mark cannot be generic or merely descriptive of cafés and coffee shops. We therefore reverse the Board's generic and merely descriptive findings based on the Kashmiri green tea meaning.

## IV. Doctrine of Foreign Equivalents

Under the doctrine of foreign equivalents, foreign words used as a mark are translated into English and then tested for genericness and descriptiveness. *In re Vetements Grp. AG*, 137 F.4th 1317, 1322 (Fed. Cir. 2025). There is a limitation on the doctrine, however, when ordinary customers would not stop and translate the mark, even if they are familiar with the foreign language. *Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772*, 396 F.3d 1369, 1377 (Fed. Cir. 2005). As such, there are situations when the doctrine does not require translation. *In re Spirits Int'l, N.V.*, 563 F.3d 1347, 1352 (Fed. Cir. 2009). One such situation is when the foreign mark "has such a well established alternative meaning that the literal translation is irrelevant because even [foreign] speakers would not translate the mark." *Id.* Determining whether the appropriate standard is applied in a doctrine of foreign equivalents inquiry is a legal question we review de novo. *See In re Vetements*, 137 F.4th at 1321–22.

The examiner refused registration under the doctrine of foreign equivalents because KAHWA means coffee in Arabic, and Bayou failed to submit a translation showing this. J.A. 58–62 (non-final office action refusing registration based on coffee meaning); J.A. 897–901 (final office action maintaining refusals based on coffee meaning); J.A. 1235–38 (reconsideration denial maintaining refusals in final office action). On appeal, the Board acknowledged Bayou's argument that the doctrine of foreign equivalents does not apply, but the Board declined to address this issue. J.A. 1–6. Bayou argues the PTO should be precluded from relying on the doctrine of foreign equivalents in any

future proceedings because the Board's decision admits KAHWA has a well-established alternative English meaning (i.e., Kashmiri green tea). Bayou Br. 20–21; J.A. 4–5 ("[T]he evidence submitted by both the Examining Attorney and Applicant also shows a well-recognized, alternative meaning to 'kahwa' as a type of green tea drink originating from Kashmir."). The Director does not dispute KAHWA has a well-established alternative English meaning. Director Br. 46. Instead, the Director argues we should not consider this issue because the Board did not address it. We agree with Bayou.

Given the parties do not dispute KAHWA has a well-established alternative English meaning, as the Board decision admits, no translation is necessary since the doctrine of foreign equivalents does not apply as a matter of law. *In re Spirits*, 563 F.3d at 1352; *see also Cont'l Nut Co. v. Le Cordon Bleu*, 494 F.2d 1395, 1396–97 (C.C.P.A. 1974). Under these circumstances, the Board's failure to address this issue, which was fully developed and briefed to the Board, does not preclude us from deciding a legal question. *N. Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed. Cir. 1994) ("We thus address the legal question, which the district court did not reach . . . .").

## CONCLUSION

We have considered the Director's remaining arguments and find them unpersuasive. Because there are no viable refusals that remain, we reverse the Board's determination that KAHWA is not registrable.

## REVERSED

### COSTS

Costs to Bayou.